IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL KIRWIN and          )
AVRA SHORKEND,              )
                            )
        Plaintiffs,         )
                            )          1:23-cv-686
    v.                      )
                            )
MARATHON MOVING COMPANY, INC.,  )
                            )
        Defendant.          )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Before this court is Defendant Marathon Moving Company, Inc.'s Motion to Dismiss. (Doc. 9.) Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant moves to dismiss Counts Two, Three, Four, and Five of Plaintiffs Michael Kirwin and Avra Shorkend's Amended Complaint, (Doc. 7). (Doc. 9; Doc. 10.) Defendant asserts that these state and common law claims are preempted by the Carmack Amendment. (Doc. 9 at 1.)[1] This motion is ripe for adjudication. This court finds a hearing is not necessary. For the reasons stated herein, Defendant's motion will be granted.

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

## I.   FACTUAL BACKGROUND

Plaintiffs are a married couple, Michael Kirwin and Avra Shorkend, who reside in Pittsburgh, Pennsylvania. (Amended Complaint ("Am. Compl.") (Doc. 7) ¶ 1.) Defendant is Marathon Moving Company, Inc., a North Carolina corporation, (id. ¶ 2), that offers moving and storage services, (id. ¶¶ 11-14).

In the spring of 2021, Plaintiffs sold their home in Greensboro, North Carolina, with the intent to move to and purchase a home in Pittsburgh, Pennsylvania. (Id. ¶ 5.) They sought out a moving company to move their belongings out of their house in Greensboro, store them for several months, and, once they found and prepared a new house in Pittsburgh, deliver their belongings to their new address. (Id. ¶¶ 6-7.) Plaintiffs wanted their belongings stored in a climate-controlled facility. (Id. ¶ 8.)

Plaintiffs vetted several moving companies, Defendant among them. (Id. ¶¶ 8-9.) Defendant's website described its climate-controlled storage: "we have our own climate-controlled warehouse in the Greensboro, NC area, giving you the perfect spot to store your residential or commercial items," and "staff will work with you to create a storage plan that utilizes our own climate-controlled warehouse in the Greensboro, NC area that works with your unique needs." (Id. ¶¶ 11-13.) When Plaintiffs

- 2 -

contacted Defendant about their need for moving and storage services, they told Defendant's operations manager, Randall Adkins, about their specific need for climate-controlled storage that included temperate and humidity control. (Id. ¶¶ 9-10.) Adkins assured Plaintiffs that Defendant's climate-controlled warehouse where their belongings would be stored was controlled for temperature and humidity. (Id. ¶ 10.)

Based on these representations about Defendant's climate-controlled warehouse, Plaintiffs hired Defendant to move, store, and deliver their household belongings. (Id. ¶¶ 15-16.) Defendant provided Plaintiffs a document, "Work Order for a Guaranteed Price" ("Work Order"), that quoted a total price of $8,846.10 for the move and storage and listed various itemized fees and language stating that "Full Value Protection will cover up to $45,000 worth of protection." (Id. ¶¶ 17-22; Ex. A, Work Order (Doc. 7-1).)

On April 19, 2021, Defendant arrived to move Plaintiffs belongings from their house in Greensboro. (Am. Compl. (Doc. 7) ¶ 24.) At that time, none of Plaintiffs belongings were noted to be mildewed, soiled, or stained. (Id. ¶¶ 25-27.) Plaintiff Kirwin was presented and directed to sign a bill of lading prepared by Defendant, which he signed without reading. (Id. ¶¶ 28-29.) Plaintiff Kirwin believed he was agreeing to the terms

- 3 -

quoted in the Work Order. (Id. ¶¶ 29–30.) Defendant moved Plaintiffs belongings from the Greensboro house to storage in Defendant's warehouse, also located in Greensboro. (Id. ¶ 32.)

Plaintiffs closed on a home in Pittsburgh, Pennsylvania, in July 2021. (Id. ¶ 33.) Before moving in and having their belongings delivered, they had repairs and improvements made to the home. (Id. ¶¶ 34–35.) Defendant delivered Plaintiffs belongings to their Pittsburgh home on September 20, 2021. (Id. ¶¶ 35–36.) Plaintiffs saw that many of their belongings, which had been in storage for around two months, were damaged. (Id. ¶ 42.) Specifically, many items were covered with "white dust," later identified as mold. (Id.) A mover told Plaintiffs that their belongings had been stored inside, but that he did not know whether they had been in climate control. (Id. ¶ 44.)

An hour after the movers had unloaded Plaintiffs' belongings and departed, their home began to smell of mold. (Id. ¶ 47.) Plaintiffs went to stay in a hotel, where they lived for 108 days while they sought to remediate mold damage to their belongings and home. (Id. ¶¶ 48, 57–59.) They spent thousands of dollars on the remediation and had to throw away many of the belongings that Defendant had stored and transported, including family heirlooms. (Id. ¶ 58.)

Plaintiffs contacted Defendant about the mold. (Id. ¶ 49.) Tyler Kastle and Randall Atkins, Defendant's owners, told them that the term "climate-controlled" meant only that the space was heated, and that "we don't have the best climate control. It sucks." (Id. ¶¶ 52–53.) In a written statement, (Ex. D (Doc. 7-4)), submitted in response to a consumer complaint Plaintiffs filed with the North Carolina Department of Justice, Defendant stated that "moisture got in [to Defendant's warehouse] and left mold on some of [Plaintiffs'] items" when they were stored there. (Id.; Am. Compl. (Doc. 7) ¶¶ 55–56.)

## II. **PROCEDURAL HISTORY**

Plaintiffs initiated this action before the Superior Court of Guilford County, North Carolina, on July 10, 2023. (Notice of Removal to Federal Court (Doc. 1) ¶ 1.) Defendant removed to federal court on August 14, 2023, on the basis of federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. (Id. ¶ 5.) On September 8, 2023, Plaintiffs filed an Amended Complaint, (Am. Compl. (Doc. 7)), alleging five causes of action: (1) liability under the Carmack Amendment, 49 U.S.C. § 14706, (id. ¶¶ 60–68); (2) fraud, (id. ¶¶ 69–79); (3) negligent misrepresentation, (id. ¶¶ 80–88); (4) breach of contract, (id. ¶¶ 89–92); and (5) unfair and deceptive trade practices, N.C. Gen. Stat. § 75-1.1, (id. ¶¶ 93–

- 5 -

98). On September 29, 2023, Defendant filed an Answer, (Def.'s Answer to Pls.' Am. Compl. ("Answer") (Doc. 8)), raising the defense of failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), (id. at 1). On the same day, Defendant filed the instant Motion to Dismiss, (Mot. to Dismiss ("MTD") (Doc. 9), and a memorandum in support of its motion, (Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Def.'s Br.") (Doc. 10)). Plaintiffs filed a response to Defendant's motion on November 3, 2023, (Pls.' Resp. in Opp'n to Def.'s Mot. to Dismiss ("Pls.' Resp.") (Doc. 12)), and Defendant filed a reply, (Def.'s Reply in Supp. of its Mot. to Dismiss ("Def.'s Reply") (Doc. 14)).

## III. <u>STANDARD OF REVIEW</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). To be facially plausible, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). When ruling on a motion to dismiss, a court must accept the complaint's factual allegations as true. <u>Id.</u> Further, a court

- 6 -

must "draw all reasonable inferences in favor of the plaintiff." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (citation omitted).

Nevertheless, sufficient factual allegations must "raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 500 U.S. at 555, 570; see Iqbal, 556 U.S. at 680. Consequently, even given the deferential standard allocated to pleadings at the motion to dismiss stage, a court will not accept mere legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." Iqbal, 556 U.S. at 678.

## IV. **ANALYSIS**

Plaintiffs' Amended Complaint alleges causes of action under the Carmack Amendment, 46 U.S.C. § 14706 (Count 1), and for fraud (Count 2), negligent misrepresentation (Count 3), breach of contract (Count 4), and unfair and deceptive trade practices, N.C. Gen. Stat. § 75-1.1 (Count 5). (Am. Compl. (Doc. 7) at 9-13.) Defendant argues that this court should dismiss Plaintiffs' state and common law claims, Counts Two through

Five, under Rule 12(b)(6) for failure to state a claim[2] because the Carmack Amendment, 49 U.S.C. § 14706, preempts such claims. (Def.'s Br. (Doc. 10) at 8–9.) Plaintiffs contend that the Carmack Amendment does not preempt those claims because they "aris[e] from actions and conduct by Defendant that is separate and distinct from the shipment of interstate commerce." (Pls.' Resp. (Doc. 12) at 2.)

"The Carmack Amendment is a 'comprehensive exercise of Congress's power to regulate interstate commerce' that creates 'a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading.'" Rush Indus., Inc. v. MWP Contractors, LLC, 539 F. App'x 91, 94 (4th Cir. 2013) (unpublished, per curiam opinion) (quoting 5K Logistics, Inc. v. Daily Exp., Inc., 659 F.3d 331, 335 (4th Cir. 2011) (cleaned up)); see also Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 704 (4th Cir. 1993).

> [The Amendment] requires the initial carrier to issue a bill of lading or receipt for property it transports and states that a carrier is liable to the "person entitled to recover" under the bill of lading "for the actual loss or injury to the property" caused by the initial carrier or any subsequent carrier to which the property is delivered. 49 U.S.C. § 11706(a); CNA Ins. Co. v. Hyundai Merch. Marine Co., 747 F.3d 339, 355 (6th Cir.

---

[2] Defendant also seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(5), (Doc. 9 at 1), but Defendant waived this defense because it failed to assert it before or in its first responsive pleading, (see Doc. 8). Fed. R. Civ. P. 12(h)(1)(B). Therefore, this court need not address it.

> 2014). While the Carmack Amendment specifies that
> "[f]ailure to issue a receipt or bill of lading does not
> affect the liability of a rail carrier," 49 U.S.C. §
> 11706(a), the forming of a contract via a bill of lading
> is "typically anticipated." CNA Ins., 747 F.3d at 355;
> see also Smallwood v. Allied Van Lines, Inc., 660 F.3d
> 1115, 1121 n.5 (noting that the Carmack Amendment
> requires a receiving carrier to issue a bill of lading).

Brentzel v. Fairfax Transfer & Storage, Inc., No. 21-1025, 2021 WL 6138286, at *2 (4th Cir. Dec. 29, 2021) (unreported, per curiam opinion).

The Carmack Amendment has broad preemptive force. Id. at *5; Adams Express Co. v. Croninger, 226 U.S. 491, 505–06 (1913)(construing the Amendment and determining that "[a]lmost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it."). The Amendment "preempts a shipper's state and common law claims against a carrier for loss or damage to goods during shipment." Ward v. Allied Van Lines, Inc., 231 F.3d 135, 138 (4th Cir. 2000). Courts in this Circuit have held that the Amendment, when applicable, preempts a variety of state and common law claims between shippers and carriers, including negligence and breach of contract, see Shao, 986 F.2d at 706–07; unfair and deceptive trade practices, see, e.g., Taylor v. Mayflower Transit, Inc., 22 F. Supp. 2d 509, 511 (W.D.N.C. 1998); and fraud and negligent misrepresentation, see, e.g.,

- 9 -

McGourty v. Collins, No. 1:07CV134, 2007 WL 4380161, at *3-4 (W.D.N.C. Dec. 11, 2007).

Plaintiffs do not dispute that the Carmack Amendment applies in this case; they bring their first claim for relief under the Amendment. (See Am. Compl. (Doc. 7) ¶¶ 60-68; Taylor, 22 F. Supp. 2d at 511 (holding plaintiff's plausibly alleged Carmack Amendment claim sufficient to establish that the Amendment applied to the case for the purposes of considering a Rule 12(b)(6) motion to dismiss state law claims). Likewise, Defendant does not challenge the sufficiency of Plaintiffs' Carmack Amendment claim in its motion to dismiss. (See MTD (Doc. 9); Def.'s Br. (Doc. 10).) Therefore, at issue is not whether the Carmack Amendment applies to the dispute, but whether Plaintiffs' four specific state law claims escape its broad preemptive effect.

Plaintiffs contend that they do. Plaintiffs characterize their state law claims as "alleg[ing] liability arising from actions and conduct . . . that is separate and distinct from the shipment of goods in interstate commerce," and they assert that the Carmack Amendment does not preempt such "separate and distinct" state claims. (Pls.' Resp. (Doc. 12) at 2-3.) Plaintiffs' argument relies upon language from the First Circuit in Rini v. United Van Lines and the Seventh Circuit in Gordon v.

- 10 -

United Van Lines. (See id. at 8-9 (quoting Rini, 104 F.3d 502, 506 (1st Cir. 1997), and Gordon, 130 F.3d 282, 289 (7th Cir. 1997).)

In Rini, a plaintiff brought a Carmack Amendment claim and state law claims of negligence, misrepresentation, and unfair and deceptive trade practices[3] against a carrier when she discovered items missing after the carrier transported her belongings from South Carolina to Massachusetts and following an "acrimonious" attempt to settle with the carrier. 104 F.3d at 503. Addressing the issue of Carmack preemption, the First Circuit stated that "liability arising from separate harms — apart from the loss or damage of goods – is not preempted" by the Carmack Amendment, and it provided two examples of such "separate harms:" (a) "if an employee of the carrier assaulted and injured the shipper;" and (b) "a claim for intentional infliction of emotional distress." Id. at 506. However, the First Circuit held that the Carmack Amendment preempted plaintiff's state law claims because they allegedly "took place in the course of settling a claim for damages stemming from the move" and, therefore, "stem from the loss of the goods." Id.

_____

[3] The plaintiff in Rini also brought an intentional infliction of emotional distress claim against the carrier, but because the jury had found against the plaintiff on that claim, it was not at issue on appeal before the First Circuit. See Rini, 104 F.3d at 503, 506.

Similarly, <u>Gordon</u> considered Carmack preemption with respect to a variety of federal and state law claims, including liability under the Carmack Amendment, breach of contract, fraud, unfair and deceptive trade practices, and intentional infliction of emotional distress ("IIED"), brought against a carrier that "never made clear to [plaintiff] what kind of coverage she needed for her goods," "fail[ed] to deliver her most priceless family memorabilia and heirlooms," and engaged in a "four-month course of deception pertaining to that nondelivery." 130 F.3d at 283-84. Reading <u>Rini</u> alongside two of its own opinions, the Seventh Circuit explained that "the Carmack Amendment does not preempt those state law claims that allege liability on a ground that is separate and distinct from the loss of, or the damage to, the goods that were shipped in interstate commerce." 130 F.3d at 289. While it concluded that plaintiffs' IIED was not preempted under this test, <u>Gordon</u> concluded, like <u>Rini</u>, that the plaintiffs' breach of contract, fraud, and unfair and deceptive practices were preempted because they alleged damages covered by the Carmack Amendment or were "directly related to the loss or damages to the goods that were shipped." <u>Id.</u> at 289-90.

A panel of the Fourth Circuit has described Carmack Preemption as "exceedingly broad," <u>Brentzel</u>, 2021 WL 6138286, at

- 12 -

*5, and, unlike the First and Seventh Circuits, the Fourth Circuit has never articulated a test to determine what claims fall beyond that broad scope. However, some district courts in this Circuit have applied the "separate and distinct" test of Rini and Gordon to Carmack preemption issues. See, e.g., Macy's Corp. Servs., Inc. v. W. Express, Inc., No. 1:16-CV-16, 2017 WL 1194358, at *7 (M.D.N.C. Mar. 30, 2017); Gale v. Ramar Moving Sys., Inc., No. CIV. CCB-13-487, 2013 WL 3776983, at *2-3 (D. Md. July 16, 2013); Nachman v. Seaford Transfer, Inc., No. 4:18CV62, 2018 WL 4186397, at *4 n.5 (E.D. Va. Aug. 31, 2018).

This court is not persuaded that applying the "separate and distinct" test is necessary or appropriate to decide the instant motion. Each of Plaintiffs' four state law causes of action have been held to be preempted by binding or persuasive authority in this Circuit. See, e.g., Shao, 986 F.2d at 706-07 (breach of contract and negligence claims); Miracle of Life, LLC v. N. Am. Van Lines, Inc., 368 F. Supp. 2d 494, 497-98 (D.S.C. 2005) (fraud and unfair trade practices); Omnitech Robotics, Inc. v. Sterling Moving & Storage Inc., No. CIV.A. WMN-12-576, 2012 WL 2522225, at *2 (D. Md. June 28, 2012) (negligent misrepresentation); McGourty, 2007 WL 4380161, at *3-4 (fraud and negligent misrepresentation); Taylor, 22 F. Supp. 2d at 511 (N.C. unfair and deceptive trade practices); Werner v. Lawrence

- 13 -

Transp. Sys., Inc., 52 F. Supp. 2d 567, 569 (E.D.N.C. 1998)
(N.C. unfair and deceptive trade practices). The weight of
authority in this Circuit supports dismissal of Plaintiffs'
state law claims without resort to the "separate and distinct"
test. But even if this court were to adopt and apply the
"separate and distinct" test, this court would still find
Plaintiffs' state law claims preempted by the Carmack Amendment
because they are not "separate and distinct."

Plaintiffs' fraud and negligence claims arise from their
allegations that Defendant "falsely advertis[ed] that it had
climate-controlled storage, and falsely [told] Plaintiffs that
their household good[s] would be stored in a warehouse
environment controlled for temperature and humidity." (Pls.'
Resp. (Doc. 12) at 10; see Am. Compl. (Doc. 7) ¶¶ 8-16, 44, 52-
54, 56, 69-88.) Plaintiffs argue that these claims are "separate
and distinct" for two reasons: (1) they do not involve the
shipment of goods in interstate commerce; and (2) they arise
from conduct that "predate[s] the bill of lading." (Pls.' Resp.
(Doc. 12) at 10.)

The first contention — that the claims do not relate to the
shipment of goods in interstate commerce — appears to be based
upon the fact that Defendant's alleged misrepresentation was
about the storage, rather than the shipment, of Plaintiffs'

- 14 -

household goods. (See id.) However, under the Carmack Amendment, the term "transportation" includes "services related to that movement, including . . . storage . . . ." 49 U.S.C. § 13102(23). Plaintiffs hired Defendant to ship their belongings interstate, from North Carolina to Pennsylvania, (Am. Compl. (Doc. 7) ¶¶ 5, 15), and storage prior to that shipment was a "service related to that movement." (See id. ¶ 15 ("Plaintiffs decided to hire [Defendant] to move, store, and deliver their household belongings.").) That Defendant's alleged misrepresentation was about the terms of storage rather than the terms of shipment is a distinction without a difference; it related to interstate transportation. See 49 U.S.C. § 13102(23); see also Marks v. Suddath Relocation Sys., Inc., 319 F. Supp. 2d 746, 750 (S.D. Tex. 2004) (holding that claims were within the Carmack Amendment's scope, despite parties' argument that they "involve the storage, not the shipment of goods," because the broad definition of "transportation" encompasses harms relating to both storage and movement of interstate-bound goods).

Plaintiffs' second contention — that the claims arise from conduct predating the bill of lading — similarly misses the mark. That Defendant's alleged misrepresentations occurred before Plaintiffs decided to engage it to transport their goods does not, alone, make their fraud and fraudulent

- 15 -

misrepresentation claims "separate and distinct." As courts have recognized:

> Theories of recovery pertaining to how the agreement to ship was entered into, what was represented by the carrier's agent, how the goods were to be packed, when they were supposed to arrive, or what the special needs of the shippers might have been, all relate to the contract of shipment. Insofar as the Carmack Amendment seeks national uniformity with regard to the interstate shipment of goods, it makes sense to merge all such claims into Carmack Amendment actions.

Richter v. N. Am. Van Lines, Inc., 110 F. Supp. 2d 406, 411 (D. Md. 2000); see also Bowman v. Paul Arpin Van Lines, Inc., No. CIV.A.3:05CV00062, 2005 WL 3590948, at *2 (W.D. Va. Dec. 30, 2005). According to Plaintiff, Defendant's representations about its climate-controlled storage caused Plaintiffs to "hire [Defendant] to move, store, and deliver their household belongings." (Am. Compl. (Doc. 7) ¶¶ 15–16, 77, 86.) In other words, Plaintiffs contend that they were induced to enter into a contract of carriage because of Defendant's allegedly fraudulent or negligent representations about the nature of the transportation services that it would provide thereunder. (See id.) As such, Plaintiffs' fraud and negligent misrepresentation claims pertain to "how the agreement to ship was entered into" and "what was represented by the carrier's agent," Richter, 110 F. Supp. 2d at 411, and fall within the scope of the Carmack Amendment.

Plaintiffs' unfair and deceptive trade practices ("UDTPA") claim is substantively similar to their fraud and negligent misrepresentation claims, (Compare Am. Compl. (Doc. 7) ¶¶ 93-94, with id. ¶¶ 69-79, and id. ¶¶ 80-88), as is Plaintiffs' argument that the claim is "separate and distinct." Plaintiffs' UDTPA claim arises out of the Defendant's representations, on its website and directly to Plaintiffs, about its climate-controlled storage. (See id. ¶¶ 9-13, 93-98; Answer (Doc. 8) ¶ 13; Pls.' Resp. (Doc. 12) at 10.) Plaintiffs allege that these representations were "false statements," made "with the intent that customers rely on [them,] to induce customers to enter contractual agreements with [Defendant]," and, therefore, "deceptive within the meaning N.C. Gen. Stat. § 75-1.1." (Am. Compl. (Doc. 7) ¶ 94.) Plaintiffs contend that their UDTPA claim is "separate and distinct" because it "does not involve conduct by Defendant under the bill of lading. Rather, this claim is based on Defendant's deceptive actions in advertising its services and convincing Plaintiffs to use its services." (Pls.' Resp. (Doc. 12) at 10.) However, as discussed above, such representations about the nature of the transportation services to be provided under a contract for carriage are within the scope of the Carmack Amendment because they pertain to "how the

agreement to ship was entered into" and "what was represented by the carrier's agent." <u>Richter</u>, 110 F. Supp. 2d at 411.

Finally, Plaintiffs contend that their breach of contract claim is "separate and distinct" because it relates to a different contract. (Pls.' Resp. (Doc. 12) at 10; <u>see</u> Am. Compl. (Doc. 7) ¶¶ 89–92.) That is, Plaintiffs allege: the parties "entered a contractual agreement whereby [Defendant] agreed to store Plaintiff's belongings in a climate-controlled warehouse," (Am. Compl. (Doc. 7) ¶ 90); this "agreement was oral and enforceable" and "not part of the bill of lading," (Pls.' Resp. (Doc. 12) at 10); and Defendant ultimately breached this agreement, (<u>id.</u>; Am. Compl. (Doc. 7) ¶ 91). Plaintiffs argue this was a separate contract for storage because the bill of lading was drafted and signed after, and did not expressly reference, Defendant's promise of climate-controlled storage. (<u>See</u> Pls.' Resp. (Doc. 12) at 11–12 ("The bill of lading itself does not mention climate-controlled storage. Rather, that promise by Defendant was separate and apart from the representations in the bill of lading." (citation omitted)).) This argument appears to misunderstand what a bill of lading is

and how it relates to a contract for carriage.[4] Whether the bill
of lading sufficiently evidences the climate-control storage
term or whether Defendant's promise became an enforceable term
under the contract for carriage are questions of contract
construction that this court need not address. Defendant's
promise to store Plaintiffs belongings in a climate-controlled
warehouse prior to moving it between North Carolina and
Pennsylvania is a promise related to interstate "transportation"
of household goods. See 49 U.S.C. § 13102(23) (defining
"transportation" as including "refrigeration, icing,
ventilation, storage, handling"); Shao, 986 F.2d at 705-07
(describing and joining "[e]very circuit court that has
considered the issue . . . to conclude . . . that the Carmack
Amendment preempts a shipper's state and common law claims of
breach of contract and negligence for goods lost or damaged by a
carrier during interstate shipment under a valid bill of

---

[4] "A bill of lading 'records that a carrier has received
goods from the party that wishes to ship them, states the terms
of carriage, and serves as evidence of the contract for
carriage.'" Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.,
561 U.S. 89, 94 (2010) (quoting Norfolk S. R.R. Co. v. Kirby,
543 U.S. 14, 18-19 (2004)).

lading").[5] A breach of contract claim that arises from such a
promise falls within the scope of the Carmack Amendment's
preemption.

Further, although Plaintiffs allege separate contracts,
they do not allege the storage was a transaction separate and
apart from the interstate shipment. Plaintiffs allege that they
were "looking for a moving company that could move out their
belongings, store their belongings for several months, and then
deliver their belongings to their new address," (Am. Compl.
(Doc. 7) ¶ 7), and that the Work Order from Marathon included
pricing for both the storage and the move, (id. ¶¶ 18—19; Ex. A,
Work Order (Doc. 7-1)). Thus, according to Plaintiffs, Plaintiff
Kirwin understood the contract of carriage to include storage

---

[5] Insofar as Plaintiffs argue that their claims are
"separate and distinct" because they seek damages not only to
their household goods, but to their new home in Pennsylvania,
(see Pls.' Resp. (Doc. 12) at 3; Am. Compl. (Doc. 7) ¶¶ 47-48,
57-59), such damages may be recoverable under their Carmack
Amendment claim. Under the Carmack Amendment, "a plaintiff
shipper can recover all reasonably foreseeable consequential
damages and lost profits that are not speculative." Rush Indus.,
539 F. App'x at 95; Am. Nat'l Fire Ins. Co. ex rel. Tabacalera
Contreras Cigar Co. v. Yellow Freight Sys., Inc., 325 F.3d 924,
931 (7th Cir. 2003) ("Recoverable damages includes damages for
delay, lost profits (unless they are speculative), and all
reasonably foreseeable consequential damages" (citations
omitted)); Pro-Com Prods. v. King's Express LA, Inc., No. CV 18-
6035-DMG, 2020 WL 1652277, at *4 (C.D. Cal. Feb. 13, 2020)
(collecting cases holding that the Carmack Amendment permits
plaintiffs' recovery of all reasonably foreseeable consequential
damages).

when he signed the Bill of Lading. (See Am. Compl. (Doc. 7) ¶ 29 ("Mr. Kirwin signed [the Bill of Lading] where he was told, assuming that he was agreeing to exactly what [Defendant] had represented to him.").)

Therefore, this court finds that Plaintiffs' claims of fraud (Count Two), fraudulent misrepresentation (Count Three), breach of contract (Count Four), and unfair and deceptive trade practices (Count Five), (Am. Compl. (Doc. 7) ¶¶ 69-98), are preempted by the Carmack Amendment, 49 U.S.C. § 14706, and it will grant Defendant's motion to dismiss those four claims pursuant to Fed. R. Civ. Pro. 12(b)(6).

## V.    CONCLUSION

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (Doc. 9), is **GRANTED** and Counts Two, Three, Four, and Five are **DISMISSED**.

This the 16th day of September, 2025.

_____
United States District Judge